IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| OLUKAYODE JOHN-ABBASS, | ) | Case No. 1:21-cv-516 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | **REPORT AND** |
| Defendant. | ) | **RECOMMENDATION[1]** |

Plaintiff, Olukayode John-Abbass, pro se, seeks judicial review of the final decision of the Commissioner of Social Security, denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act.  The Administrative Law Judge ("ALJ") denied John-Abbass's application at Step One of the sequential evaluation process, determining that John-Abbass's average income during the period under adjudication was enough to qualify as engaging substantial gainful activity.  In doing so, however, the ALJ failed to apply proper legal standards in determining which earnings counted as substantial gainful activity, explaining why the presumption created by earning levels was not rebutted, and developing a full record at the ALJ hearing.  Thus, I recommend that the Commissioner's final decision denying John-Abbass's applications for DIB and SSI be vacated and that John-Abbass's case be remanded for further consideration.

---

[1] This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b).

## I.     Procedural History

John-Abbass applied for DIB and SSI on January 25, 2018.  (Tr. 355, 359).[2]  John-Abbass alleged that he became disabled on December 7, 2017 due to left shoulder pain and arthritis.  (Tr. 355, 359, 409).  The Social Security Administration denied John-Abbass's applications initially and upon reconsideration.  (Tr. 236-57, 260-93).  John-Abbass then requested an administrative hearing.  (Tr. 308, 311).

ALJ Joseph G. Hajjar heard John-Abbass's case on March 13, 2019, at which John-Abbass appeared pro se, and denied the claims in a May 8, 2019 decision.  (Tr. 167-71, 177-235).  Based on John-Abbass's testimony regarding his work and pay from December 2017 to December 2018 and his earnings records, the ALJ determined that John-Abbass engaged in substantial gainful activity from March through September 2018.  (Tr. 170-71).  Because there was no consecutive 12-month period during which John-Abbass was not engaged in substantial gainful activity, the ALJ determined that John-Abbass was not disabled.  (Tr. 171).  On April 6, 2020, the Appeals Council declined further review, rendering the ALJ's decision the final decision of the Commissioner.  (Tr. 13-16).  On March 4, 2021, after receiving extensions from the Appeals Council, John-Abbass filed a complaint to obtain judicial review.  (Tr. 8-9); ECF Doc. 1.

## II.     Evidence

Because the ALJ denied John-Abbass's application at Step One of the sequential evaluation process and did not proceed to later steps, the only evidence relevant to John-Abbass's appeal is evidence pertaining to his earnings and work activity during the period under adjudication.  Thus, I will only summarize the evidence related to his earnings and work activity.

---

[2] The administrative transcript appears in ECF Doc. 12.

A.      **Personal, Educational, and Vocational Evidence**

John-Abbass was born on December 5, 1963 and he was 54 years old on the alleged onset date.  (Tr. 236, 355, 359).  John-Abbass completed high school and obtained an associate degree in psychology.  (Tr. 188, 410).  He had prior work as a driver, general laborer, security guard, and a wrapper through 2016.  (Tr. 410).  At the time of the alleged onset date, John-Abbass was working part-time as a sorter for $11.45 per hour.  (Tr. 410, 421, 435-36, 451).  On August 18, 2018, John-Abbass started working for Amazon.  (Tr. 473, 500).

B.      **Wage and Earnings Inquiries**

According to inquiries from the National Directory of New Hires ("NDNH"), John-Abbass was hired by Global Technical Recruiters, Inc., on May 1, 2017, from which he received wages through the third quarter of fiscal year 2017.  (Tr. 398-99).  During the fourth quarter of fiscal year 2017, he received wages from Area Temps, Inc.  (Tr. 398).  On December 4, 2017, John-Abbass started working for FedEx, from which he received wages through the third quarter of fiscal year 2018.  (Tr. 397-98).  And on August 11, 2018, John-Abbass started working for Amazon, from which he received wages through the end of 2018 (Tr. 398, 405-06).

John-Abbass's quarterly earnings were: (i) $3,651 for the fourth quarter of fiscal year 2017; (ii) $2,524 for the first quarter of fiscal year 2018; (iii) $3,878 for the second quarter of fiscal year 2018; and (iv) $4,085 for the third quarter of fiscal year 2018.  (Tr. 397-98).  According to a detailed earnings inquiry, however, John-Abbass's total earnings for fiscal year 2018 were $17,348.21 – $9,305.57 from FedEx and $8,042.64 from Amazon.  (Tr. 395-96, 406-07).

### C.    Relevant Testimonial Evidence

John-Abbass testified at the ALJ hearing that he worked for Amazon from August to December 4, 2018.  (Tr. 188-90, 193-94).  He worked 3 days per week and occasionally 5 days per week, 12 hours per day, and earned between $12 and $15 per hour.  (Tr. 189-91).  John-Abbass testified that before Amazon, he worked for FedEx from December 2017 until July 2018. (Tr. 192, 194).  He worked the first half of that period part-time (20 hours) and then moved to a full-time (30 to 40 hours) position, earning $12 per hour.  (Tr. 195-97).

At the end of the hearing, the ALJ informed John-Abbass that the ALJ needed to review his earnings given his post-onset-date work to determine whether they amounted to substantial gainful activity under the regulations.  (Tr. 231).  The ALJ explained that if his earnings met that threshold, it would preclude him from receiving benefits.  *Id.*

John-Abbass responded to the ALJ that he only worked to be able to afford his sons' tuition fees.  (Tr. 232).  He had also been working on the advice of an attorney to "make more money to apply."  (Tr. 233).

## III.    Law & Analysis

### A.    Standard of Review

The court reviews the Commissioner's final decision to determine whether it was supported by substantial evidence and whether proper legal standards were applied.  42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  "Substantial evidence" is not a high threshold for sufficiency.  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  "It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (quotation marks omitted).  Even if a preponderance of the evidence supports the claimant's position, the Commissioner's decision still cannot be

4

overturned "so long as substantial evidence also supports the conclusion reached by the ALJ." *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020) (quotation marks omitted). Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). And "it is not necessary that this court agree with the Commissioner's findings," so long as it meets this low standard for evidentiary support. *Rogers*, 486 F.3d at 241. This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without being second-guessed by a court. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and [when] that error prejudices a claimant on the merits or deprives the claimant of a substantial right."). And the court will not uphold a decision when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked.").

### B.    Step One

In his brief, John-Abbass asks that this court reconsider the denial of his application and grant him benefits. ECF Doc. 15 at 2, 4. He states that he only worked during the period under adjudication to pay his sons' tuition costs. ECF Doc. 15 at 3. He states that all the while, he was

in pain.  *Id.*  John-Abbass further states that he has submitted along with his brief his medical records, which show how his condition has worsened.  ECF Doc. 15 at 4; *see* ECF Doc. 13.

The Commissioner argues that the ALJ appropriately determined that John-Abbass was engaged in substantial gainful activity during the period under adjudication.  ECF Doc. 16 at 5. The Commissioner argues that John-Abbass's earnings exceeded the regulatory threshold for substantial gainful activity, such that the ALJ's finding that John-Abbass had no consecutive 12-month period during which he did not engage in substantial gainful activity was supported by substantial evidence.  ECF Doc. 16 at 6-7.

At Step One of the sequential evaluation process, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).[3]  The claimant carries the burden of proving that he did not engage in substantial gainful activity during the period under adjudication.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  If the claimant fails to meet his burden, his "claim is rejected without consideration of [his] medical condition."  *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245-46 (6th Cir. 1996) (citing 20 C.F.R. §§ 416.920(a), (b)).

"Substantial gainful activity" is work that is both "substantial" and "gainful."  20 C.F.R. § 404.1510.  Work is "substantial" if it "involves doing significant physical or mental activities," and work is "gainful" when it is done for pay or profit.  20 C.F.R. § 404.1510(a)-(b).  The primary basis upon which substantial gainful activity is determined is the claimant's earnings. 20 C.F.R. § 404.1574(a)(1).  If the claimant's earnings exceed the monthly earning levels defined by the regulations, the claimant is presumed to have engaged in substantial gainful

---

[3] Although this case concerns both DIB and SSI benefits, the regulations that govern them are generally identical to one another; thus, I cite only the regulations governing DIB applications.  *Compare* 20 C.F.R. § 404.1501 *et seq.*, *with* 20 C.F.R. § 416.901 *et seq.*

activity.  *Bell*, 105 F.3d at 246; *see also Robinson v. Berryhill*, 426 F. Supp.3d 411, 424 (E.D. Mich. 2019).  The presumptive monthly earning threshold levels for years 2017 through 2019 are $1170, $1180, and $1220, respectively.  20 C.F.R. § 404.1574(b)(2)(ii); *see* Program Operations Manual System ("POMS") DI 10501.15B, available at https://secure.ssa.gov/poms.nsf/lnx/04105 01015 (last visited May 11, 2022).  A claimant may rebut the presumption created by earning more than the threshold amount "with evidence of his inability … to perform the job well [or] without special assistance."  *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 747 (6th Cir. 2018) (alteration in original) (quotation marks omitted); *see* 20 C.F.R. § 404.1573.

As an initial matter, other than disagreeing with the ALJ's Step One conclusion, John-Abbass's brief does not substantively contest the ALJ's findings or analysis.  *Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 621 (6th Cir. 2013) ("Issues adverted to in a perfunctory manner, without some effort to develop an argument, are deemed forfeited."); *see generally* ECF Doc. 15.  However, I do not find that John-Abbass has forfeited his appeal.  As a pro se litigant, his brief must be liberally construed.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  Although liberal construction has its limits, one of the main concerns is lack of notice to the defendant as to the basis upon which the plaintiff seeks relief.  *See Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001).  The Commissioner has filed a brief defending the ALJ's Step One analysis without raising any argument as to forfeiture.  *See generally* ECF Doc. 16.  Thus, I find that the court may review the ALJ's Step One analysis.  *See Sheeks v. Comm'r of Soc. Sec. Admin.*, 544 F. App'x 639, 641 (6th Cir. 2013) ("[A]potential forfeiture may itself be forfeited.").

The ALJ failed to apply proper legal standards in determining whether John-Abbass engaged in substantial gainful activity.  42 U.S.C. § 405(g); *Rogers*, 486 F.3d at 241.  The ALJ determined that John-Abbass was not disabled because there was no continuous 12-month period

during which he did not engage in substantial gainful activity.  42 U.S.C. § 423(d)(1)(A); (Tr. 171).  That determination was based on the ALJ's finding that John-Abbass's earnings during the period under adjudication exceeded the threshold amounts under the regulations and that John-Abbass failed to defeat the presumption of substantial gainful activity.  (Tr. 170-71).

Although flawed in his analysis, the ALJ correctly determined that the regulatory presumption was triggered.  The relevant period for John-Abbass's applications was from December 7, 2017 through May 8, 2019, the date of the ALJ's decision.  *Henrich v. Soc. Sec. Comm'r*, 440 F. Supp. 3d 699, 703 n.1 (E.D. Mich. 2020); (Tr. 171, 355).  The ALJ, therefore, considered John-Abbass's earnings from the fourth quarter of fiscal year 2017 through the third quarter of fiscal year 2018.  (Tr. 171).  And the ALJ was correct to use an average monthly amount.  SSR 83-35, 1983 SSR LEXIS 36, at *4 (1983).

The flaw in the ALJ's analysis, however, lies in the ALJ's calculation of the average amount.  During the fourth quarter of fiscal year 2017, John-Abbass earned $3,651 - $975 of which was earned from FedEx in December 2017.  (Tr. 398).  The ALJ did not specify during which months the remainder of that sum was earned from Area Temps, Inc.  The relevant months matter because inconsistent earnings can be averaged only into the periods to which they pertain.  SSR 83-35, 1983 SSR LEXIS 36, at *9-10 ("When an individual works over a period of time during which the SGA level changes, earnings are not averaged over the entire period of worked involved.").  The amount John-Abbass earned from FedEx for December 2017 was less than the threshold amount for that period.  POMS DI 10501.015B.  By contrast, the amounts earned from Area Temps, Inc. ($2,676), which were earned between October and November 2017, exceeded the threshold amounts.  POMS DI 10501.015B; (Tr. 435).  Thus, the ALJ could not group John-

8

Abbass's earnings from Area Temps, Inc. with those of FedEx and divide them evenly for the fourth quarter of fiscal year 2017.  SSR 83-35, 1983 SSR LEXIS 36, at *9-10.

The ALJ also did not consider whether John-Abbass's earnings from Amazon derived from an "unsuccessful work attempt," which cannot be counted as substantial gainful activity. 20 C.F.R. § 404.1574(b)(3), (c).  An unsuccessful work attempt must: (i) follow a 30-day period of no work; (ii) last no more than 6 months; and (iii) result in discontinuation of the work attempt due to an impairment or reduction of work to below the earnings threshold.  20 C.F.R. § 404.1574(c).  John-Abbass's employment with Amazon would appear to satisfy these requirements, given that: (i) he testified that he stopped working for FedEx after seven months – July 4, 2018 (Tr. 194); (ii) the NDNH report indicated that he started working for Amazon on August 11, 2018 – 38 days after he stopped working for FedEx (Tr. 397); and (iii) John-Abbass testified that he only worked for Amazon until December 4, 2018 – less six months – either because it was seasonal or because he "couldn't hold it" in light of his impairment(s) (Tr.  188, 190-91, 194).

Were these the only issues with the ALJ's analysis, the errors could be overlooked as harmless.  *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009). Excluding the above earnings and the first fiscal quarter of year 2018, the ALJ correctly determined that John-Abbass's earnings from FedEx surmounted the threshold amounts for the second quarter of fiscal year 2018 – triggering the presumption.  (Tr. 395, 398); *Bell*, 105 F.3d at 246; 20 C.F.R. § 404.1574(a)(1).  And from the date John-Abbass stopped working for FedEx, he had only a continuous 10-month period during which he did not engage in substantial activity. 42 U.S.C. § 423(d)(1)(A).

However, the ALJ's computation of John-Abbass's earnings was not the only error with the ALJ's Step One findings.  As the Sixth Court has emphasized, "the mere existence of earnings over the statutory minimum is not dispositive."  *Cardew*, 896 F.3d at 747 (alterations and quotation marks omitted).  In addressing the rebuttable nature of the presumption, the ALJ said only that John-Abbass "alleged no special accommodations or work conditions during the employment he held after the alleged onset date."  (Tr. 171).  There are two problems with that analysis.  First, although special accommodations and work conditions are relevant, other relevant considerations include: (i) the nature of the work; (ii) the employee's performance at work; and (iii) the amount of time spent at work.  20 C.F.R. § 404.1573(c).  The ALJ did not meaningfully address any of these points.  Thus, the ALJ failed to build a logical bridge between the evidence and the result of his decision.  *Fleischer*, 774 F. Supp. 2d at 877.

Secondly, although John-Abbass did not allege any special accommodations or working conditions, the ALJ did not ask him at the ALJ hearing whether there were any.  Given the inquisitorial nature of Social Security proceedings, the ALJ breached his duty to develop the facts regarding the conditions under which John-Abbass worked as it related to his impairments before deciding whether his work activities constituted substantial gainful employment.  *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000).  The ALJ conducted an extremely limited examination into the nature of John-Abbass's impairments as they related to the work he performed during the period under adjudication.  The ALJ asked about John-Abbass's impairments, how they limited his functional abilities, and his treatment.  (Tr. 210-20).  And the ALJ asked extensively about the functional demands of John-Abbass's prior work.  (Tr. 197-209).  But the ALJ did not ask about whether or how John-Abbass's impairments interfered with the work he performed just months before the hearing.  *See Lashley v. Sec'y of Health & Hum. Servs.*, 708 F.2d 1048, 1052

10

(6th Cir. 1983) (concluding that the ALJ's failure to fully develop the record denied the claimant a full and fair hearing).

The ALJ's failure to question John-Abbass specifically on the effects of his impairments on his ability to work at the jobs he was performing during the period under adjudication leaves this court without a record with which to determine whether the error was harmful. *Bowen*, 478 F.3d at 746; *see Smith v. Comm'r of Soc. Sec.*, No. 1:12 CV 2165, 2013 U.S. Dist. LEXIS 116385, at *16 (N.D. Ohio July 24, 2013). That the ALJ reached his disability determination at Step One also precludes this court from assessing whether the error was harmless. Thus, a remand is warranted for the ALJ conduct a new hearing addressing the deficiencies noted above and issue a new decision more fully explaining his reasons for why the presumption of substantial gainful activity was not rebutted.

## IV.    Recommendation

Because the ALJ failed to apply proper legal standards in determining whether John-Abbass engaged in substantial gainful activity and breached his duty to fully develop the record, I recommend that the Commissioner's final decision denying John-Abbass's applications for DIB and SSI be vacated and that John-Abbass's case be remanded for further consideration.

Dated: May 11, 2022

Thomas M. Parker
United States Magistrate Judge

_____

**Objections, Review, and Appeal**

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge.  Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C.§

636(b)(1); Local Rule 72.3(b).  Properly asserted objections shall be reviewed de novo by the assigned district judge.

* * *

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation.  *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019).  Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).  Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 U.S. Dist. LEXIS 100383, *6 (W.D. Ky. June 15, 2018) (quoting *Howard*).  The failure to assert specific objections may in rare cases be excused in the interest of justice.  *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).